UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

TIMOTHY L. JOHNSON )
)
v. ) NO. 2:05-CV-281
)
JO ANNE B. BARNHARDT, )
Commissioner of Social Security )

## **MEMORANDUM OPINION**

The plaintiff Timothy L. Johnson has filed a motion for summary judgment on his complaint to obtain judicial review of the final decision of the defendant Commissioner of Social Security Jo Anne B. Barnhardt denying his application for supplemental security income and disability insurance benefits under the Social Security Act. The defendant has also filed a motion for summary judgment.

Mr. Johnson was born in 1965 and was 38 years old at the time of his administrative hearing. [Tr. 282]. He completed eighth grade and has relevant past work experience as a vinyl siding installer. [Tr. 13, 283]. Mr. Johnson alleges he is disabled as of November 5, 2002, from headaches, shaking, high blood pressure, and "blocking of his mind." [Tr. 13]. Based upon a finding that his severe impairments were not severe enough, the Administrative Law Judge [ALJ] found that Mr. Johnson was not disabled as defined by the Social Security Act. [Tr. 19].

At Mr. Johnson's administrative hearing held on May 26, 2004, the testimony of Mr. Johnson and vocational expert Donna Bardsley was received into evidence. [Tr. 282-300]. Mr. Johnson testified he lived with his girlfriend and two children. [Tr. 282]. He indicated he had been in jail before, but he had not been in jail since at least November 5, 2002. [Tr. 283]. His last job was as a vinyl siding installer. [Tr. 284]. He left that job because his cousin--who was also employed with the business and helped Mr. Johnson get the job--quit. [*Id.*]. Mr. Johnson testified he was unable to work now because of his nerves, forgetfulness, depression, and left leg pain. [Tr. 286-87]. He stated he was in special education classes throughout his schooling. [*Id.*]. Mr. Johnson mainly sits at home during the day, although he enjoys fishing occasionally. [Tr. 288]. He is able to wash dishes. [Tr. 288]. Mr. Johnson testified that he used to receive Social Security benefits for his "nerves and alcoholism." [Tr. 294]. He indicated he no longer drinks on a daily basis, but he does have "a couple beers every once in a while." [Tr. 295].

Vocational expert Donna Bardsley testified next that Mr. Johnson's past relevant work as a vinyl siding installer was heavy and semi-skilled. [Tr. 297]. The ALJ then asked her to assume a man of Mr. Johnson's height, weight, age, education, and work background who had an intellectual endowment in the borderline range and was restricted to light and medium work. [*Id.*]. Such a person also had an emotional

disorder with mild to moderate restrictions regarding his ability to perform work-related activities. [*Id.*]. The vocational expert testified that such a person could work as a hand packager, sorter, assembler, inspector, cleaner, and food preparer, *inter alia*. [*Id.*].

The ALJ ruled that Mr. Johnson was not disabled because his severe impairments of status-post left medial meniscectomy, borderline intellectual functioning, alcohol abuse, and a depressive disorder (not otherwise specified) were not severe enough for a finding of disability. [Tr. 16]. The ALJ then found Mr. Johnson retained the residual functional capacity [RFC] to perform light and medium work consistent with an emotional disorder with mild to moderate restrictions regarding his ability to perform work-related activities as well as work consistent with a borderline intellectual functioning. [Tr. 16]. With those limitations, Mr. Johnson could perform work that exists in significant numbers in the national economy. [Tr. 19].

This court must affirm an ALJ's conclusions unless the ALJ applied incorrect legal standards or made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405g. "Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The findings of the Commissioner are not

3

subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Accordingly, this court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

Mr. Johnson requests summary judgment and contends the ALJ erred when he failed to find that Mr. Johnson met the requirements of 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05C and Listing 12.05D. To meet the requirements of Listing 12.05C, Mr. Johnson would have to show a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Under Listing 12.05D, he would have to demonstrate a:

> "[V]alid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration."

During testing administered by Alice Garland, M.S., in February 2003, Mr. Johnson obtained a verbal IQ score of 62, a performance IQ score of 65, and a full

4

scale IQ score of 61. [Tr. 186]. Ms. Garland found, however, that his "adaptive behavior is well within the Borderline range [of intellect] and that these are probably low test scores." [*Id*.]. Ms. Garland opined that "testing today is not felt to be an accurate estimation of [his] ability." [Tr. 187]. She did not diagnose Mr. Johnson with mental retardation. [*Id*.].

Even if Mr. Johnson's IQ scores are considered valid and correct, he is still unable to meet all the requirements of the Listings. Under Listing 12.05C, he also has to demonstrate another physical or mental impairment that significantly impinges on his ability to perform work. The ALJ found that Mr. Johnson's impairments included status-post left medial meniscectomy, borderline intellectual functioning, alcohol abuse, and a depressive disorder (not otherwise specified), but these impairments were not severe enough for a finding of disability. [Tr. 16]. Evidence has not been presented to this court that would challenge this finding of the ALJ. Accordingly, this court finds that Mr. Johnson is unable to satisfy the demands of Listing 12.05C, his IQ score notwithstanding.

Mr. Johnson also cannot meet the requirements under Listing 12.05D, regardless of his IQ score. He must, as stated above, show evidence of two of the following:

    1.    Marked restriction of activities of daily living; or
    2.    Marked difficulties in maintaining social functioning; or

> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

Mr. Johnson's own admissions and testimony remove consideration of the first and second options. He prepares meals about three times a week, occasionally fishes, and performs household chores. [Tr. 82-83, 98-99, 185, 288]. He also is able to shop for himself and visit with friends and relatives. [Tr. 82, 84, 100]. As for option three, Mr. Johnson's past work as a vinyl siding installer removes any suggestion that he has marked difficulties in concentration, persistence, and pace. Such a job is semi-skilled. [Tr. 297]. In addition, Mr. Johnson left his position not because of a mental or physical impairment, but because the person who helped him get the job left the company. [Tr. 284, 289]. Finally, with option four, there is no evidence in the record to support one episode of decompensation, much less repeated episodes. Mr. Johnson simply cannot meet the statutory requirements of Listing 12.05D.

After careful consideration of the entire record of proceedings related to this case, Mr. Johnson's motion for summary judgment will be denied, the defendant's motion for summary judgment [Doc. 10] will be granted, and this action will be dismissed.

An appropriate order will follow.

ENTER:

                                    s/Thomas Gray Hull
                                    THOMAS GRAY HULL
                                        SENIOR U. S. DISTRICT JUDGE